IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JAMES CURTIS FRANKLIN,                              Civil No. 05-403-KI

      Petitioner,                        AMENDED OPINION AND ORDER

  v.

BRIAN BELLEQUE,

      Respondent.


        Thomas J. Hester
        Office of the Federal Public Defender
        101 S.W. Main Street, Suite 1700
        Portland, OR  97204

            Attorney for Petitioner


        Hardy Myers
        Attorney General
        Lester R. Huntsinger
        Assistant Attorney General
        Oregon Department of Justice
        1162 Court Street, NE
        Salem, OR  97301

            Attorneys for Respondent

KING, District Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the habeas petition (#2) is GRANTED.

## BACKGROUND

Subsequent to a domestic dispute with his girlfriend, Petitioner was indicted on two counts of Kidnaping in the First Degree (Counts 1 and 2), two counts of Burglary of an Occupied Dwelling Involving Physical Injury (Counts 3 and 4), Attempted Assault in the Second Degree (Count 5), Assault in the Fourth Degree (Count 6), Criminal Mischief in the Second Degree (Count 7), and Theft in the Second Degree (Count 8). Following a trial by jury, Petitioner was found guilty on Counts 2, 3, 6, 7 and 8. Petitioner was sentenced to 115-months incarceration on Count 2, Kidnaping, with a mandatory minimum of 90-months under Oregon's mandatory minimum statute, and three years of post-prison supervision. Concurrent sentences were imposed on the remaining convictions. Petitioner has been released from the physical custody of the Oregon Department of Corrections, but is still serving his post-prison supervision term.

At trial, Petitioner was represented by retained counsel. During pre-trial proceedings and throughout the trial, the trial judge admonished counsel for his failure to adhere to local court rules, and for his lack of knowledge of evidentiary and

substantive rules, as well as other deficiencies. The trial judge coached counsel on the need to have Petitioner testify in order to present several defense theories, and also on his cross-examination of the victim. Despite the trial judge's coaching, and Petitioner's requests to testify, trial counsel did not call Petitioner to testify and defense theories were not presented to the jury. Concern over counsel's performance also prompted the trial judge to offer to appoint co-counsel. However, Petitioner declined after consulting with his retained counsel.

The prosecution presented its case principally through the testimony of the victim and the police officers responding to her 911 call. The victim testified that, upon returning home for lunch, she found Petitioner trying to enter her apartment through the locked sliding glass patio door. She told Petitioner to leave, and threw the clothing he had come for out the front door. As Petitioner persisted in trying to enter the apartment, the patio door shattered. (Trial Tr. day 4, 16.) Shortly thereafter, the victim went to the manager's apartment, reported the incident as a break-in, and asked to use the phone while debating about whether to call police. (*Id*. 16-17.) She did not heed the manager's advice to call police, but, upon returning to her apartment, she repeatedly told Petitioner to leave. (*Id*. 22.) The dispute escalated and Petitioner became physically

aggressive; choking the victim, dragging her by the hair, and preventing her from leaving the apartment. (*Id.* 22-30.)

The victim also testified concerning her living arrangement with Petitioner. She testified Petitioner had returned his key to the apartment the night before when she had asked him to leave. (*Id.* 44.) She testified that only her name was on the apartment lease and that she paid all the rent. (*Id.* 10.) She testified on cross-examination that Petitioner was not on the lease because it would have violated conditions of his probation/parole. (*Id.* 54.) She stated that she and Petitioner shared some expenses, and that he gave her the "promise ring" found in his possession when he was arrested. (*Id.* 62-64; 59-60.) Petitioner's father would testify later that he lent the victim and Petitioner money, but the purpose of these loans was not established at trial. (Trial Tr. day 6, 4-6.)

Two police officers testified to the victim's physical and emotional state when they arrived at her apartment, to the damage in her apartment, and to the Petitioner's arrest shortly after he fled the scene. A nurse and physician who examined the victim a few hours after the incident testified in greater detail about the nature and extent of the victim's injuries. (Trial Tr. day 5, 44-85.) Petitioner's sister testified for the defense about telephone conversations with her brother and the victim during their dispute. (*Id.* 120-137.)

After the jury returned its verdict and had been excused, the trial judge stated:

> "This case should have either been plea bargained, or the defendant should have waived his right to a jury and just presented it to a judge, go ahead and taken the stand, acknowledged the prior record, and then with your prior record, a judge would have taken into consideration the nature of these facts, the type of crime it was, and probably arrived at, maybe, a different result from what the jury reached. You went the other way, probably on the advice of counsel, but I don't know that, and you ended up with what to me was a predictable, obvious result. There was almost no way it was going to turn out any other way with this sort of approach. It borders on the worst criminal defense I have seen in 25 years that I have been either a prosecutor, a defense attorney, or a judge. It was just simply a terrible job, and because of that, Mr. Franklin is now convicted of these major crimes.
>
> Now, that is not to say he is not responsible for some of the conduct, but I'm not ready to decide what the sentence is. I want to think about this a little bit, because I am not sure you got a fair shake here, Mr. Franklin."

(Trial Tr. day six, 168-69.)

At sentencing, counsel moved for a mistrial or a new trial in light of his poor representation. (Sentencing Tr. 9-10.) The motion was denied. The trial judge encouraged Petitioner to file for post-conviction relief.

Petitioner directly appealed his conviction alleging that the trial court erred in refusing: (1) to instruct the jury on renter/sublessor defense to the burglary charges; (2) to instruct the jury on self-defense as a defense to the assault charges; and (3) to sign a warrant for the arrest of a subpoenaed witness.

The Oregon Court of Appeals affirmed without opinion. *State v. Franklin*, 161 Or.App. 200, 984 P.2d 957 (1999). The Oregon Supreme Court denied review. 329 Or. 527, 994 P.2d 128 (1999).

Petitioner filed for state post-conviction relief (PCR), alleging ineffective assistance of counsel. The PCR trial court found that counsel's representation was deficient under both state and federal standards, but denied relief finding Petitioner had not shown prejudice.

Petitioner appealed, arguing that the PCR trial court erred in finding he had not shown prejudice because the sheer magnitude of counsel's errors and the trial court's comments regarding counsel's representation demonstrated there was prejudice. Petitioner also argued he was prevented from presenting his defense theories when counsel did not let him testify. The Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *Franklin v. Lampert*, 192 Or.App. 487, 89 P.3d 95 (2004), *rev. denied* 337 Or. 160, 94 P.3d 876 (2004).

In the instant proceeding, Petitioner sets forth the following grounds for relief:

1) Trial court erred in refusing (a) to instruct jury regarding defendant's status as a renter or subleasee, (b) to instruct the jury on self-defense, and (c) to sign an arrest warrant for a subpoenaed defense witness;

2) Trial counsel rendered ineffective assistance of counsel by failing to (a) object to his sentence based on *Apprendi v. New Jersey*; (b) apprise himself of necessary trial court rules and procedures (nine examples); (c) properly subpoena

witnesses and documents; (d) request a mistrial when a witness blurted out Petitioner's past criminal history; (e) honor Petitioner's request to testify in his own defense; (f) prepare for the case; (g) object to the state's closing argument; (h) hire co-counsel to assist with the case, or withdraw to permit appointment of counsel;

3)    Ineffective assistance of counsel in that counsel failed to recognize his errors and take measures to correct them;

4)    Taken together, all allegations of counsel's deficient performance denied Petitioner due process and effective assistance of counsel;

5)    The PCR court erred in finding Petitioner was not prejudiced by counsel's constitutionally deficient performance, and the appellate courts erred in affirming the PCR trial court.

## DISCUSSION

Respondent asks the court to deny Petitioner relief on the basis that most claims are procedurally defaulted and, as to those that are not, the state court decision denying relief is entitled to deference.

## I.    Exhaustion and Procedural Default

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims.  28 U.S.C. § 2254(b). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'"  *Casey v.*

*Moore*, 386 F.3d 896, 915-16 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986)).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level and is now precluded from doing so. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

A.   <u>Fairly Presented Ineffective Assistance of Counsel Claims</u>

Respondent contends that Petitioner procedurally defaulted the majority of his claims relating to counsel's deficient performance by failing to exhaust each discrete claim. I disagree. The performance prong of *Strickland* was not the focus of Petitioner's PCR appeal because Petitioner had prevailed on this prong in the PCR trial court. Nevertheless, the state courts were sufficiently put on notice that Petitioner was raising all the ineffectiveness claims raised at post-conviction.

In his state appellate brief, Petitioner specifically asserted that "he has been denied Effective Assistance of Trial Counsel in violation of the United States Constitution. . ." and refers to pages 2-6 of his first amended petition for post-conviction relief attached to the brief. (Respt.'s Exh. 122, 5.) Pages 2-6 outline all of Petitioner's ineffectiveness claims. Petitioner also refers to an attached copy of the spreadsheet detailing counsel's errors and the trial court's admonitions. (*Id.* 1, 4, 7.) While it is true Petitioner cites only three "examples" of counsel's deficient performance in the body of his appellate brief, I do not see this as limiting his claims to those examples in light of his earlier explicit reference to the claims on pages 2-6 of the attached post-conviction petition.

Because Petitioner described the legal theory and the underlying facts of his federal ineffectiveness claims to the state appellate courts, I find that Petitioner fairly presented the claims of ineffective assistance of counsel presented here, with the exception of ground for relief 2(a) discussed below. *See Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (fair presentation requirement is met where the petitioner has described the operative facts and legal theory on which his claim is based), *cert. denied*, 538 U.S. 1042 (2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007). ///

B.    Procedurally Defaulted Claims

Ground for Relief 1

Petitioner raises three instances of trial court error.  As Respondent notes, Petitioner does not argue these grounds for relief in his supporting memorandum and does not refute Respondent's assertion that these claims were not advanced in the state courts as federal questions.  Pursuant to 28 U.S.C. § 2248 "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that a judge finds from the evidence that they are not true."

The record supports the conclusion that Petitioner's claims of trial court error are unexhausted and procedurally defaulted. Because Petitioner has not shown cause or prejudice or actual innocence so as to excuse his default, he is not entitled to relief on these claims.

Ground for Relief 2(a)

The PCR trial court specifically denied relief on Petitioner's claim that counsel was deficient for failing to object to his sentence based on principles articulated in *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000), because *Apprendi* had not been decided at the time of Petitioner's trial. Petitioner did not appeal this ruling.  Accordingly, Ground 2(a)

was not presented to the state's highest court and is unexhausted and procedurally defaulted.   Because Petitioner has not excused his default by proving cause or prejudice or by a showing of actual innocence, Petitioner is not entitled to relief on this claim.

## II.  The Merits

A.   Standards and Scope of Review under §2254

The parameters for a federal court to grant habeas relief to a person in custody pursuant to the judgment of a state court are set out in 28 U.S.C. §2254 (d):

> An application . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision involves an "unreasonable application" of clearly established Supreme Court law if "the state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the ... case." *Lambert v. Blodgett,* 393 F.3d 943, 974 (9th Cir. 2004), *cert. denied,* 126 S. Ct. 484 (2005).   The state court's application of law must be *objectively unreasonable*.   *Id.* (emphasis added).   "[A] federal habeas court may not issue the

writ simply because that court concludes in its independent judgment that the state court decision applied [the law] incorrectly. . . . An *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002).

An unreasonable determination of the facts occurs when the fact-finding process is flawed. Examples of a flawed process include: making evidentiary findings without holding a hearing, misstating the record, ignoring the record, misapprehending the evidence presented. *Taylor v. Maddox*, 366 F. 3d 992, 1001 (9th Cir. 2004). State court findings of fact are presumed to be correct, absent petitioner rebutting the presumption of correctness with clear and convincing evidence that the state court findings of fact are in error. *Miller-El v. Cockrell*, 537 U.S. 322, 341-42 (2003), *Lambert*, 393 F.3d at 972 (citing *Taylor*, 366 F.3d at 999).

B.    Ineffective Assistance of Counsel

It is well established that a claim of ineffective assistance of counsel is governed by the principles articulated in *Strickland v. Washington*, 466 U.S. 668 (1987). Under *Strickland*, a petitioner has the burden of proving (1) that counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors the result of the

proceeding would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002); *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Strickland*, 466 U.S. at 687-88.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  *Strickland* emphasizes that "the ultimate focus of the [ineffectiveness] inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.  "In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.*

1. Deficiency of Performance

In his state PCR proceedings, Petitioner presented a spreadsheet detailing 221 trial events highlighting counsel's deficiencies and admonitions by the trial court, and Respondent openly acknowledged counsel's representation was poor by stating in closing arguments:  "[I]t's absolutely the most egregious transcript I've ever read, and it's inexcusable." (Respt.'s Exh. 121, 29.)   The PCR court found counsel's performance was deficient under both state and federal standards.

The record is replete with evidence that trial counsel was ill prepared and had a poor understanding of the law and procedural rules.  The trial court's admonitions and comments on

counsel's deficiencies are remarkable for their frequency and bluntness. Respondent's candid recognition of counsel's deficiencies in the PCR proceedings is also remarkable. The state PCR court's conclusion, that counsel's representation fell below an objective standard of reasonableness, is clearly reasonable.

The central, and more difficult question for this court is whether it was an unreasonable application of *Strickland* for the PCR court to conclude Petitioner was not prejudiced by counsel's deficient representation.

2.  <u>Prejudice from Deficient Representation</u>

The prejudice inquiry, like the performance inquiry, is a mixed question of fact and law. *Strickland*, 466 U.S. at 698. Accordingly, the "[f]act-finding underlying the state court's decision is accorded the full deference of §§ 2254(d)(2) and (e)(1), while the state court's conclusion as to the ultimate legal issue - or the application of federal law to the factual findings - is reviewed per § 2254(d)(1) in order to ascertain whether the decision is 'contrary to, or involved an unreasonable application of, clearly established' Supreme Court precedent." *Lambert v. Blodgett*, 393 F.3d 943, 977-78 (9th Cir. 2004).

To prevail under *Strickland*, Petitioner is required to show that there is a reasonable probability that the outcome of the trial would have been different absent counsel's errors.

14 - AMENDED OPINION AND ORDER -

Petitioner argues:  a) counsel's performance was so dismal that prejudice should be presumed; b) the state PCR court applied the wrong standard for prejudice; c) the cumulative impact of counsel's deficiencies establishes prejudice; and d) the PCR court unreasonably applied *Strickland* and made an unreasonable determination of the facts.

a)  Presumed prejudice

The Supreme Court has identified limited circumstances under which prejudice need not be proven and is presumed.  *United States v. Cronic,* 466 U.S. 648, 658-663 (1984).  However, a presumption of prejudice is applied very sparingly.  *Toomey v. Bunnell*, 898 F.2d 741, 744 (9th Cir. 1989).  Prejudice may be presumed if a petitioner shows (a) he was denied counsel at a critical stage of the proceedings, (b) there was an actual conflict between the petitioner and counsel, or (c) counsel "failed to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659.  The failure must be complete. *Bell*, 535 U.S. at 697; *United States v. Thomas*, 417 F.3d 1053, 1058 (9th Cir. 2005), *cert. denied*, 126 S.Ct. 1095 (2006).

Petitioner argues prejudice should be presumed in his case because "counsel's pervasively dismal performance amounted to an abandonment of the adversarial role.  The State's case was assuredly not subjected to 'the crucible of meaningful

adversarial testing.'"   (Petr.'s Mem. 28-29.)   Petitioner cites
*United States v. Swanson*, 943 F.2d 1070, 1072-76 (9th Cir. 1991)
in support of presuming prejudice.

In *Swanson*, the Ninth Circuit applied a presumption of
prejudice under *Cronic* when, in closing argument, counsel
conceded the only factual issue in dispute and effectively
abandoned the defense.  The court found counsel had abandoned the
defense at a critical stage in the criminal proceedings.  *Id.* at
1074; *but see Thomas*, 417 F.3d at 1058 (admission of guilt on one
issue was tactical strategy and not a basis for presuming
prejudice).   In so holding, however, *Swanson* recognized the
*Strickland* prejudice requirement is applicable in cases where the
record reflects that an attorney's errors occurred during an
inept attempt to present a defense.  943 F.2d at 1073.  That is
the case here.

The PCR court found counsel was adequate in certain aspects
of his role and not in others.  The court opined that counsel's
cross-examination of the victim "while not stellar was well
within the range of professional competence." (Respt's Exh. 106,
5.)   Additionally, counsel successfully moved to exclude
Petitioner's criminal history (although he later opened the door
to the victim's testimony that Petitioner was on parole); through
the testimony of Petitioner's sister counsel raised the issue of
the victim's drug use; counsel argued to be allowed to use state

landlord-tenant law as a defense (although the court had to inform counsel this defense was not available without Petitioner's testimony); and counsel argued for the concurrent sentences that the court imposed.

Because Petitioner did not show (a) he was denied counsel at a critical stage of the proceedings, (b) that there was an actual conflict between himself and counsel, or (c) that counsel's failure to challenge the prosecution was *complete*, it was not contrary to or an unreasonable application of federal law for the PCR court not to presume prejudice.

<u>Legal standard for prejudice</u>

Petitioner argues the PCR trial court applied the wrong legal standard to its prejudice analysis in concluding "counsel's performance would not have changed the result or had a tendency to do so."  I disagree.

*Strickland* requires the defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Explaining its decision to deny relief, the PCR court correctly articulated the *Strickland* standard, then listed factors it found significant in its analysis of the question, concluding that "*counsel's performance would not have changed the results or had a tendency to do so.*" (Respt.'s Exh. 106, 6) (emphasis added).  The PCR court's

conclusion speaks to the probability of a different outcome at trial and reflects application of the proper legal standard. The language "or had a tendency to do so[,]" simply reflects the Oregon standard for proving prejudice, which the court applied to Petitioner's claim brought under the state constitution. *See Krummacher v. Gierloff*, 290 Or. 867, 883 (1981).

Cumulative impact and the application of *Strickland*

The Ninth Circuit has recognized the cumulative impact of errors by counsel in evaluating prejudice under *Strickland*. *See Turner v. Duncan*, 158 F.3d 449, 457 (9th Cir. 1998) (it is appropriate to consider the cumulative impact of the errors when errors prevent the proper presentation of defenses); *Harris v. Wood*, 64 F.3d 1432, 1438-39 (9th Cir. 1995) (errors cumulatively prejudicial when counsel deficient in eleven ways); *Mak v. Blodgett*, 970 F.2d 614, 622 (9th Cir. 1992).

Petitioner contends the record conclusively establishes he was prejudiced because of the cumulative impact of counsel's errors. Petitioner argues counsel's ineffective performance permeated the trial and resulted in his defense theories not being presented to the jury and the state's case not being tested.

Petitioner's primary theory of defense was that he was legally entitled to be in the apartment as a co-tenant and that any assaultive behavior occurred in self-defense. On the kidnap

charges, the theory was that the victim was not credible in claiming he intentionally interfered with her personal liberty. Petitioner asserts that presenting these defense theories would have changed the outcome of the trial. As further proof of prejudice, Petitioner points to the trial judge openly questioning counsel's competence and the fairness of the proceeding. (Trial Tr. day 5, 41-42; day 6, 167-68.)

Petitioner presented the PCR court a spreadsheet with 221 trial events highlighting counsel's failures and the court's admonitions. As the PCR court noted, Petitioner "raise[d] a plethora of mistakes and omissions by counsel[,]" ranging from "trivial to exasperating . . . to more serious." The PCR court noted specifically:

> Counsel attempted to raise self defense. He also attempted to raise as a defense to the burglary charges, his client's right to be in the apartment because he was a tenant. When counsel told the court that his client would not testify, the court quite properly informed counsel that without his client's testimony, these defenses could not be presented to the jury. There was no other evidence on these points. The decision to have a defendant testify or not can be a very difficult one especially when as here a defendant has a criminal record. However, the attempt to present these defenses to a jury without a defendant's testimony, or any other evidence on these points raises serious questions as to the adequacy of counsel.

(Respt.'s Exh. 106, 5.)

///

In its prejudice inquiry, the PCR court reasoned:

- The State's case was very strong.  It's [sic] principal
witness who was adequately cross-examined by counsel was
very believable despite bad personal decisions and drug use,
both of which were pointed out to the jury.  There were
pictures of the scene showing the damage.  There was much
independent evidence by police and medical personnel to
support the victim's testimony.

- If Petitioner had testified at trial, he would have been
impeached by his bad criminal record which included two
person crimes.  He would have had to explain why he fled
from the police running on the second story roof of the
apartment building.  And, he would have had to explain the
injuries on the victim.  The jury heard the defense
witnesses and apparently was not impressed.

(*Id.*, 5-6.)  The PCR court concluded "counsel's performance would

not have changed the result."  I disagree.

In the analysis of prejudice, the PCR court did not address

the extraordinary number of errors counsel made, the frequent

admonitions of the trial court, and the fact Petitioner was

unable to present defense theories to the jury because counsel

did not understand what was required to do so.  The number of

errors counsel made and the seriousness of some compels

consideration of their cumulative impact on the defense.

Counsel's failure to call Petitioner to testify caused the

forfeiture of his defenses, yet Petitioner's defenses were

plausible.  Until the evening prior to the incident, Petitioner

and the victim shared the apartment where the incident occurred

and shared household expenses.  Petitioner returned to the

apartment to get his clothing.  During the dispute, the victim left the apartment and a short time later chose to return without having called police.  In light of these facts, presenting the jury with Petitioner's version of events and challenging the credibility of the victim might well have had an impact on the jury's findings with respect to Petitioner's right to be on the premises and his alleged interference with the victim's liberty.[1] There is no reason to believe the jury would not have considered Petitioner's testimony, even upon learning details of his criminal history.[2]  Moreover, despite hearing only the victim's version of the dispute, the jury acquitted Petitioner of several of the charges:  one count of kidnaping, one count of burglary, and one count of assault.

———————————

[1]In PCR proceedings, Petitioner stated he would have testified that "[he] and the alleged victim had been living together for a year in the same apartment, shared a checking account, shared bills to our cars, food, everything, and that it was just a big misunderstanding, and that she was just jealous and trying to get back at me."  (Respt.'s Exh. 120, 20; Respt.'s Exh. 121, 13.) Petitioner also stated he would have testified that the victim initiated the assault when she hit him with an iron, and this was the basis for claiming self-defense.  (Respt.'s Exh. 121, 14.) He would have testified that on prior occasions when they fought he had returned the apartment key to her, and she had returned the promise ring to him.  (*Id.* at 15.)  Petitioner also identified an excluded witness, the victim's ex-boyfriend, who described her potential for violence to the defense investigator. (Respt.'s Exh. 120, 17.)

[2]Petitioner's criminal history as presented by the State:  1989 - conviction for Criminal Mischief in the second degree; conviction for Robbery in the first degree; 1992 conviction on two counts of forgery in the first degree; 1993 conviction for assault in the fourth degree.  (Trial Tr. day six, 159-160.)

In addition to the forfeiture of Petitioner's defenses, counsel's numerous errors resulted in thwarted attempts to introduce evidence, and to subpoena and question witnesses; in the jury learning that Petitioner was on probation; in bungled attempts to impeach the victim. All were detrimental to the defense by limiting and skewing the information available to the jury. In fact, counsel's cross-examination of the victim was so detrimental the trial judge interrupted the proceeding, expressed his concerns and coached counsel before allowing him to continue. (Trial Tr. day 4, 67-68.)

The number and gravity of counsel's errors raises serious questions as to the fundamental fairness of Petitioner's trial. While the trial judge expressed confidence in the outcome of the trial at sentencing, he had just stated that had he had the authority to do so, he might have replaced counsel early in the proceedings. (Sentencing Tr. 9-10.) The judge's expression of confidence must also be weighed against his pointed condemnation of counsel's performance and his acknowledgment that the result might have been different in a bench trial. (Trial Tr. day 6, 168-69.)

Based on the above, I do not hesitate to conclude that counsel's errors cumulatively prejudiced Petitioner's defense. Because counsel's performance was constitutionally deficient under both state and federal standards and Petitioner was

prejudiced as a result, the state court's determination of his ineffectiveness claim was an unreasonable application of *Strickland v. Washington*.

## CONCLUSION

Based on the foregoing, Petitioner's Petition for Writ of Habeas Corpus (#2) is GRANTED. Respondent shall release Petitioner from custody/post-prison supervision and vacate his convictions unless the state retries him within 60 days. The court notes Petitioner has served at least the 90-month mandatory minimum term of his sentence, despite an unconstitutional conviction, and is presently on post-prison supervision.

IT IS SO ORDERED.

DATED this ____2nd____ day of October, 2007.


_/s/ Garr M. King_____
Garr M. King
United States District Judge